ANGLO AMERICAN INSURANCE GROUP, P.L.C. and Anglo American Insurance Holdings Limited, Plaintiffs,

v.

CALFED INC., XCF Acceptance Corporation, as successor by merger to Calfed Inc., and William J. Fitzpatrick, Defendants.

William J. FITZPATRICK, Third–Party Plaintiff,

v.

ANGLO AMERICAN INSURANCE COMPANY LIMITED, Third–Party Defendant.

CALFED INC. and XCF Acceptance Corporation, as successor by merger to Calfed, Inc., Third–Party Plaintiffs,

v.

KPMG PEAT MARWICK McLINTOCK, Third–Party Defendant.

No. 92 Civ. 9137 (RLC).

United States District Court, S.D. New York.

Sept. 6, 1996.

Stroock & Stroock & Lavan, New York City, for Second Third–Party Plaintiffs; Alvin K. Hellerstein, Brian M. Cogan, Alan Z. Yudkowsky, Karen Leo, of Counsel.

Dechert Price & Rhoads, New York City, for Second Third–Party Defendant; James E. Tolan, William K. Dodds, Judith L. Bachman, of Counsel.

Morgan, Lewis & Bockius, New York City, for Plaintiffs; Laurie E. Foster, James M. Conway, of Counsel.

ROBERT L. CARTER, District Judge.

Defendant and second third-party plaintiff XCF Acceptance Corp., as successor by merger to CalFed, Inc. ("XCF"),[1] moves for reargument, pursuant to Local Rule 3(j), of the court's February 26, 1996 opinion denying XCF's motion to transfer venue to the United States District Court for the Central District of California. Familiarity with the court's February 26, 1996 opinion is assumed. KPMG, second third-party defendant, moves to dismiss for failure to state a claim and on the grounds of *forum non conveniens.* The court considers each motion in turn. The facts underlying this action will not be repeated here except as necessary for the present motions.

---

1. Although the court follows the parties' current submissions and refers to the second third-party plaintiff as "XCF," the events and dealing currently at issue occurred when XCF was the corporate entity known as "CalFed."

## I. Local Rule 3(j) Motion

XCF brought an amended second third-party complaint[2] against KPMG, an English accounting partnership, for breach of contract, negligence, and indemnification and contribution. XCF moved for transfer to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404(a). After finding that XCF had satisfied the tests for plaintiff-as-movant for transfer under § 1404(a), and for showing that jurisdiction existed in the proposed transferee district, the court denied the motion based on the convenience factors considered within the court's discretion.

■ In order to be successful on its motion for reconsideration, XCF must present "matters or controlling decisions the court overlooked that might materially have influenced its earlier decision." *Morser v. AT & T Information Systems*, 715 F.Supp. 516, 517 (S.D.N.Y.1989) (Sweet, J.). Rule 3(j) is to be narrowly construed and strictly applied to avoid repetitive arguments on issues that have been considered fully by the court. *Ades v. Deloitte & Touche*, 843 F.Supp. 888, 892 (S.D.N.Y.1994) (Sweet, J.).

XCF moves for reargument on two grounds. First, XCF contends that the court incorporated KPMG's previous *forum non conveniens* motion[3] into its consideration of the convenience factors by comparing California with England rather than comparing California with New York. XCF argues it was judged under a burden that KPMG should have shouldered: showing that California was more convenient than both New York and England. Secondly, XCF contends that the court expressed uninvited conclusions on California's statute of limitations. In support of these two contentions, however, XCF does not present matters or controlling decisions overlooked; rather, XCF selectively relies on sentences taken out of context from the February 26, 1996 opinion.

The defendant and second third-party plaintiff's Rule 3(j) motion is denied.

## II. Motion to Dismiss

### A. *Failure to State a Claim*

Arguing that the laws of England are applicable to this dispute, whether or not the action is dismissed or transferred to England on *forum non conveniens* grounds, KPMG avers that XCF has not stated a claim under English law. KPMG thus moves for dismissal. Alternatively, KPMG argues that dismissal is warranted because XCF has not stated a claim under New York law.

■ In deciding which law would apply to this cause of action, a diversity case, this court applies the choice of law principles of New York, the forum state. *Krauss v. Manhattan Life Ins. Co. of New York*, 643 F.2d 98, 100 (2d Cir.1981). In New York, the "interest analysis" test governs choice of law issues involving contract, tort, and indemnification or contribution disputes. *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 137 (2d Cir.1991) (contracts); *Dept. of Economic Development v. Arthur Andersen & Co. (U.S.A.)*, 747 F.Supp. 922, 935 (S.D.N.Y.1990) (Stewart, J.) (contribution); *Sullivan v. J.V. McNicholas Transfer Co.*, —— A.D.2d ——, 638 N.Y.S.2d 260, 261 (4th Dept.1996) (torts). Under such a test, the law of the jurisdiction having the greatest interest in the litigation will be applied. *Wm. Passalacqua Builders*, 933 F.2d at 137. Under this analysis, the court must look to factors such as: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.* A review of these factors

2. Plaintiffs in the main action were the Anglo American Insurance Group and the Anglo American Insurance Holdings Ltd. Formerly known as Mazard P.L.C. and Magister Agency Investments Ltd. (collectively, "Mazard"), plaintiffs purchased then-CalFed's subsidiary, Anglo American Insurance Company Limited ("Anglo"), and then changed their corporate names. In the main action, plaintiffs brought suit against then-CalFed and William J. Fitzpatrick. Fitzpatrick, a former officer and director of Anglo, subsequently brought the first third-party action against Anglo.

3. Prior to XCF's motion to transfer, KPMG submitted a motion to dismiss based on *forum non conveniens* that was subsequently mooted by XCF's amended complaint.

leads to the conclusion that English law applies. While the parties dispute where (and whether) they entered into the oral agreement, the rare fact to which the parties do agree is that both parties met in London where they allegedly negotiated and agreed upon KPMG's alleged obligations.[4] *See* Declar. of George P. Rutland, former President of XCF's predecessor, CalFed, dated 5/03/95 at Exh. 5 annexed to Aff. of William K. Dodds, at ¶¶ 7–12; Second Third–Party Pl.'s Memo of Law in Opp'n to Mot. to Dismiss at 6–7; Second Third–Party Def.'s Memo of Law in Support of Mot. to Dismiss at 7. The subject matter of the alleged agreement—Anglo and the London insurance market—is located in England. Regarding performance, the court has previously held that the alleged oral contract indicated performance in both England and California, *Anglo American Ins. v. CalFed Inc.,* 916 F.Supp. 1324 (S.D.N.Y.1996) (Carter, J.). This factor is therefore inconclusive as is the fifth factor because XCF and KPMG are incorporated and residents of their respective forums. Although the sales agreement governing the sale of Anglo from XCF to plaintiffs contained a New York choice of law clause, KPMG was not a signatory to that agreement.

■ XCF argues that because this present action is a derivative of the main action, which was brought by plaintiffs as a result of that sales transaction gone wrong, the choice of law clause should still apply. XCF does not present any legal basis for binding KPMG, a non-signatory, to the choice of law clause. XCF's claims against KPMG do not involve the sales agreement nor any questions of law based on that agreement. Furthermore, the clause would not apply to XCF's tort claim against KPMG because under New York's conflict of law rules, a contractual choice of law provision "does not bind [the parties] as to causes of action sounding in tort." *Fustok v. Conticommodity Services, Inc.,* 618 F.Supp. 1082, 1089 (S.D.N.Y.1985) (Lasker, J.) (citing *Klock v. Lehman Bros. Kuhn Loeb Inc.,* 584 F.Supp.

210, 215 (S.D.N.Y.1984) (quoting *Knieriemen v. Bache Halsey Stuart Shields, Inc.,* 74 A.D.2d 290, 427 N.Y.S.2d 10, 12–13 (1st Dept. 1980)); *see also Broadcasting Rights Int'l Corp. v. Societe du Tour de France,* 675 F.Supp. 1439, 1448 (S.D.N.Y.1987) (Sweet, J.).

■ Pursuant to Rule 44.1, F.R.Civ.P., once an issue of foreign law has been properly raised, a federal court may make a determination of that law and in making that determination "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Rule 44.1, F.R.Civ.P. The court's determination is treated as ruling on a question of law. *Id.* "[F]oreign law should be argued and briefed like the domestic law," *Curtis v. Beatrice Foods Co.,* 481 F.Supp. 1275, 1285 (S.D.N.Y.) (Pollack, J.) (quoting Pollack, *Proof of Foreign Law,* XXVI Am. J.Comp.L. 470, 475 (1978)), *aff'd,* 633 F.2d 203 (2d Cir.1980), and as with domestic law, judges should use both their own research and the evidence submitted by the parties to determine foreign law. *Ackermann v. Levine,* 788 F.2d 830, 838 (2d Cir.1986). Both parties submitted affidavits from English counsel setting forth the relevant provisions under English law for determining whether an English court would dismiss on these grounds.

The relevant rule under English law is Order 18 Rule 19(1) of the English Rules of the Supreme Court ("RSC"). (Aff. of William K. Dodds for Second Third–Party Def., Ex. 10—Opinion of Richard Field, English counsel, dated 4/18/96 ("Field Opinion"); Decl. of Alvin K. Hellerstein for Second Third–Party Pl., Ex. 5—Opinion of Peter Hayward, English counsel, dated 5/14/96 ("Hayward Opinion")). This rule provides in part:

> The court may at any stage of the proceedings order to be struck or amended any pleading or the indorsement of any writ in

---

**4.** This finding is not inconsistent with XCF's argument that the witnesses with the most relevant testimony on the issue of the formation of the agreement reside in California. The current analysis examines where the contract was made, not necessarily where the witnesses knowledgeable about the alleged agreement reside for a *forum non conveniens* analysis.

the action, or anything in any pleading, or in the indorsement, on the ground that—

 (a) it discloses no reasonable cause of action or defence, as the case may be ... and may order the action to be stayed or dismissed or judgment to be entered accordingly, as the case may be.

Order 18 Rule 19(1) of the RSC (Field Opinion, subexh. 1). An English court's analysis under this rule assumes that all the pleaded allegations made by the party asserting the claims are true. (Field Opinion at ¶ 8; Hayward Opinion at ¶ 4(5) (citing Supreme Court Practice 1995, Vol. 1 at ¶ 18/19/6)).

KPMG's central argument is that XCF's breach of contract claim cannot withstand a Rule 12(b)(6), F.R.Civ.P., analysis because this claim alleges the breach of an implied term that an English court would not find was a part of the alleged oral contract. In Paragraphs 9 and 10 of the amended complaint, XCF alleges that XCF's contractual engagement of KPMG included specific obligations within the ambit of the implied duty of good faith: "to reasonably cooperate with CalFed [XCF's predecessor corporation] in respect of its auditing and accounting work and, as necessary and appropriate, to explain, support and defend KPMG's work concerning the matters undertaken in the engagement, particularly given the absence of any financial or operating staff of the subsidiary, and the complete control by Weavers[5]

of the combined affairs and assets of the entire Stamp, including CalFed's subsidiary [Anglo]." (Am. Second Third–Party Compl. at ¶¶ 9–10, 23). In Paragraph 23 of the amended complaint, XCF alleges that when KPMG refused to assist XCF in its defense against plaintiffs in the main action[6]—by refusing to explain or support its audits and opinions rendered to XCF—KPMG violated these implied contractual obligations.[7]

KPMG counters that it only accepted the obligation of auditing Anglo and that XCF argues for an expansion of the obligation owed by a professional to a client to include a nebulous notion of a duty to assist in litigation. KPMG argues that under RSC Order 18 Rule 19(1)(a), an English court "would readily hold that it is plain and obvious that the contended for implied term is neither necessary to give business efficacy to the engagement pleaded in Paragraph 9 nor represents the obvious but unexpressed intention of the parties." (Field Opinion at ¶ 11). Thus, an English court would find that KPMG was not subject to the contractual duty pleaded in Paragraphs 10 and 23 and this claim would be struck out. (*Id.* at ¶¶ 12, 15).

In essence, then, KPMG has not argued that a court would find that XCF has failed to allege the requisite elements of a breach of contract claim; rather, KPMG has concluded that an English court, after determin-

---

**5.** H.S. Weavers (Underwriting) Agencies Limited or "Weavers," was appointed by various companies, including Anglo, to be their underwriting agents. These companies are collectively referred to as "the Weavers Stamp companies" or "the Stamp."

**6.** XCF, then known as CalFed, sold Anglo to plaintiffs in February, 1990. When in late March, 1990, Weavers stopped underwriting any further business for its Stamp companies, including Anglo, a significant portion of the London insurance market allegedly collapsed. The plaintiffs in the main action then brought suit against XCF in 1992 for breach of warranty and negligent misrepresentation for failing to disclose certain material facts relating to the adverse financial condition of Anglo. (Am. Second Third–Party Compl. at ¶ 19). XCF asked KPMG for assistance in its defense against plaintiffs' claims. Counsel for XCF and KPMG met and exchanged letters in an effort to negotiate the terms under which KPMG would assist XCF. Those efforts failed and in 1994, XCF brought the present

action against KPMG. (Reply Declar. of Alvin K. Hellerstein, counsel for XCF, dated 1/3/96). In 1995, XCF amended the complaint to the present breach of contract, tort, and contribution or indemnification allegations against KPMG.

**7.** In its current memorandum of law, XCF contends that these specific obligations are actually pled as contractual duties owed by KPMG in addition to KPMG's duty of good faith arising under the agreement. *See* Second Third–Party Pl.'s Memo of Law in Opp'n to Mot. to Dismiss at 43; Am. Second Third–Party Compl. at ¶ 10. However, in its first claim for relief in the amended third-party complaint, XCF alleges that KPMG's breach was a breach of the duty of good faith. (Am. Second Third–Party Compl. at ¶ 23). The court need not resolve the apparent conflict between XCF's description of its allegations and the court's reading of the allegations in the complaint because, as the following discussion indicates, the court has found that XCF has adequately alleged a breach of the duty of good faith by KPMG. *See* note 8, *infra.*

ing the facts of the parties' contractual dealings, would find that the alleged obligations should not be implied. In fact, XCF has alleged an implied term that may be inferred into the oral agreement under English law.[8]

■ More troubling to the court, however, is the question of whether there can be an implied duty owed to XCF that continues beyond the expiration of KPMG's allegedly contracted-for duties. XCF has given the court no basis to conclude in the affirmative; nor can the court discern such a basis. KPMG was allegedly engaged by XCF for services related to Anglo and the London insurance market.[9] XCF does not allege that the oral agreement between the parties continued beyond the sale of Anglo to plaintiffs in February, 1990. Yet the breach upon which XCF sues—KPMG's alleged refusal to assist XCF in its defense [10]—occurred at least three years after KPMG was under any alleged obligation to XCF. It was from August, 1993 to January, 1994 during which then-CalFed and KPMG were negotiating whether KPMG would assist then-CalFed. (Reply Declar. of Alvin K. Hellerstein, counsel for XCF, dated 1/3/96). According to XCF, KPMG's letter of January 14, 1994

represented KPMG's final say on the matter that KPMG would not assist XCF without a general release. (*Id.* at ¶ 3). KPMG may arguably be liable for its actions to XCF, but this liability, based on a refusal to assist XCF, does not sound in contract.

While XCF may have alleged an implied term that may be inferred into the oral agreement under English law, the claim against KPMG for breach of contract cannot stand because XCF has failed to allege any legal basis for recognizing liability for a breach that occurred after the expiration of KPMG's contractual duties.

■ With respect to XCF's tort claim, XCF alleges that:

By refusing to reasonably cooperate with and assist CalFed in defending against Plaintiffs' claims, and by refusing to explain or support the integrity of KPMG's audits and opinions that Plaintiffs impugned and as to which exposure to CalFed was created, KPMG breached its *duty to exercise reasonable care* in the performance of its obligations towards CalFed.

(Am. Second Third–Party Compl. at ¶ 27 (emphasis added)). KPMG claims that an

---

**8.** It is well recognized under English law that contracts for services contain an implied promise to exercise reasonable care and skill in the performance of the relevant services or at least, not to injure the other party. *Henderson v. Merrett Syndicates Ltd.* [1995] 2 A.C. 145, 193, 194. Moreover, XCF's allegation that there existed a specific implied term meets the conditions specified by English law and by the treatise on which KPMG relies. For example, the language allegedly used by the parties in arriving at the oral agreement gives rise to an inference that XCF and KPMG intended the implied obligations. (*See* note 9, *infra,* for the language allegedly recognized by KPMG and XCF as describing KPMG's obligations to XCF). It is reasonable that a party who hires a professional for its services would expect that professional to explain and support the services rendered, whether they be audits or conclusions about the London market, when the quality of that work is challenged. Similarly, it is reasonable that a professional undertakes a requested job with the understanding that it singularly has the knowledge and wherewithal to explain and support the professional work rendered. Secondly, the circumstances under which this agreement was allegedly entered into—that KPMG undertook its professional obligations to XCF with the knowledge that the proposed company would not en-

gage any officers, employees or staff and that XCF would henceforth rely on KPMG's audits and advice—also support the inference that the parties intended the implied obligation. (Am. Second Third–Party Compl. at ¶ 10). Thus, XCF has alleged that KPMG owed an implied obligation which expresses the obvious but unexpressed intentions of XCF and KPMG. *See e.g., Hamlyn & Co. v. Wood & Co.* [1891] 2 Q.B. 488, 494; 1 *Chitty on Contracts* 619–22, paragraphs 13–004 to 13–006 (27th ed. 1994) ("[An English] court will be prepared to imply a term if there arises from the language of the contract itself, and the circumstances under which it is entered into, an inference that the parties must have intended the stipulation in question").

**9.** Paragraph 9 of the amended third-party complaint states that the oral agreement between KPMG and XCF required KPMG "to perform complete and independent audits of the proposed company; to render business advice concerning the London insurance market; to report any market problems that might affect its investment to [XCF] ... and to advise [XCF] in relation to potential investments in related companies." (Am. Second Third–Party Compl. at ¶ 9).

**10.** *See* Am. Second Third–Party Compl. at ¶¶ 20–21.

English court would find that KPMG did not owe the tortious duty alleged by XCF. KPMG relies on *Henderson v. Merrett Syndicates Ltd.* [1995] 2 A.C. 145 for the incorrect proposition that when a defendant's duty of care arises because it has entered into a contract with a plaintiff, the defendant's contractual duties set the boundaries of its tortious duties. (Field Opinion at ¶ 14). Thus, having opined in its submissions that an English court will not find that KPMG owed the implied contractual duty pleaded in XCF's breach of contract claim, KPMG claims that the same court would find KPMG did not owe the tortious duty pleaded in Paragraph 27. (Field Opinion at ¶ 15).

In *Henderson*, the House of Lords thoroughly examined English law to conclude that the principle enunciated in *Hedley Byrne & Co. Ltd. v. Heller & Partners Ltd.* [1964] A.C. 465—that "liability may arise in tortious negligence in respect of services (including advice) which are rendered for another, gratuitously or otherwise, but are negligently performed"—is also applicable when these services are rendered under a contract. *Henderson* 2 A.C. at 186–187, 193. The law will recognize a tortious duty where there was a relationship between the parties, one party had assumed or undertaken a responsibility towards the other, and that latter party was possessed of a "special skill" which it undertook to "apply for the assistance of another who relie[d] upon such a skill." *Henderson,* 2 A.C. at 180. In other words, "an assumption of responsibility coupled with the concomitant reliance [will] give rise to a tortious duty of care irrespective of whether there is a contractual relationship between the parties"; thus, the causes of action are separate and not constrained by each other. *Id.* at 194.

Liability based on this tortious duty can be limited only if: (1) the contract between the parties expressly precludes liability grounded in tort; (2) to impose a tortious duty "is so inconsistent with the applicable contract that . . . the parties must be taken to have agreed

that the tortious remedy is to be limited or excluded"; or (3) the imposition of the tortious duty would undermine a well-established pattern of contractual duty. *Id.* at 194, 195–96.

Construing the facts in XCF's favor, XCF has alleged that there was a relationship between itself and KPMG (Am. Second Third–Party Compl. at ¶¶ 6, 9); that KPMG assumed a responsibility towards XCF (*Id.* at ¶¶ 9–10); that KPMG possessed the special skills of an auditor and an advisor on the London insurance market (*Id.* at ¶ 8); and that XCF relied on KPMG (*Id.* at ¶ 11). None of the limiting circumstances are alleged to exist here: clear words are required to exclude liability in negligence, *Henderson* 2 A.C. at 183, and to hold that an auditor/advisor has a duty to provide its audits and advice with reasonable care cannot be seen as disturbing the well-established contractual relationship between an auditor/advisor and client.[11] Whether KPMG violated its duty of care by refusing to explain and support its audits and/or advice is a question of fact as is the question of whether such a duty was incurred in the first place. But the cause of action for KPMG's violation of a duty to exercise reasonable care in its obligations to XCF survives KPMG's motion for failure to state a claim because XCF has sufficiently alleged the existence of a duty.

■ XCF also seeks contribution from KPMG "to the extent that Plaintiffs recover from [XCF] in connection with any of the allegations contained in the amended complaint [of the plaintiffs' main action against XCF]." (Am. Second Third–Party Compl. at ¶ 31). XCF and the plaintiffs have actually settled the main action. In the present submissions, XCF's English counsel does not address whether this claim can exist under English law with respect to the settled main action. KPMG's counsel comments on the issue by stating that this claim cannot survive the dismissal of XCF's contract and tort claims. (Field Opinion at ¶ 16). The Civil

---

11. *Henderson* expressly recognized that the *Hedley Byrne* principle is indeed applicable to accountants, and to a number of different categories of people who perform services of a professional or quasi-professional nature which would include advisors. *Henderson* 2 A.C. at 181–182. *Henderson* also revisited the question of concurrent liability in contract and tort and reasserted the principle that there is no restriction on concurrent liability. *Id.* at 187–193.

Liability (Contribution) Act of 1978, ch. 47, §§ 1–2 (Eng.) ["the Act"], provides, however, that a defendant to one action is not precluded by reason of settlement from claiming contribution even though in making the settlement, it did not admit liability. *Id.* at § 1(4).[12] This provision was enacted to remove a defense to a contribution claim enunciated by the English Court of Appeals in *Stott v. West Yorkshire Road Car Co. Ltd.,* [1971] 2 QB 651 (Eng.C.A.). *See* Notes to The Civil Liability (Contribution) Act of 1978, 13 Statutes 649, 651 (Halsbury's Statutes of England and Wales, 4th ed. 1996 reissue). There, the court had held that a defendant who settled the main action could proceed with a contribution claim against a third party but that the contribution claim would fail unless it was established in the contribution proceedings that the defendant claiming the contribution was in fact liable to the plaintiffs in the main action. Subsection (4) of the Act states that the defendant claiming contribution need no longer prove that it was in fact liable to plaintiffs in a settled action; the defendant only has to show that if the factual basis of the allegations made against it by the plaintiffs in the settled main action were true, it would have been liable. Thus, XCF's contribution claim survives, despite the settlement between plaintiffs and XCF and the dismissal, by this court, of XCF's contract claim.[13]

## B. Forum Non Conveniens

■ Now remaining before the court is whether, as KPMG argues, the court should dismiss the surviving claims based on the doctrine of *forum non conveniens* in favor of trial in England. The common law doctrine of *forum non conveniens* permits a court to decline to exercise jurisdiction when it could be more conveniently exercised by another court. The "central purpose" of a *forum non conveniens* analysis is to determine where trial will be convenient and will serve the interests of justice. *R. Maganlal & Co. v. M.G. Chemical Co., Inc.,* 942 F.2d 164, 167 (2d Cir.1991).

It is well settled that under this doctrine, the plaintiff's choice of forum should rarely be disturbed. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981). The United States Supreme Court has recognized, however, that dismissal nevertheless may be appropriate where certain private and public interest factors point towards trial in an alternative forum. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). A court weighs these factors to decide whether the facts "(1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems." *Koster v. Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 831–32, 91 L.Ed. 1067

---

**12.** Subsection (4) provides:

A person who has made or agreed to make any payment in bona fide settlement or compromise of any claim made against him in respect of any damage (including a payment into court which has been accepted) shall be entitled to recover contribution in accordance with this section without regard to whether or not he himself is or ever was liable in respect of the damage, provided, however, that he would have been liable assuming that the factual basis of the claim against him could be established.

**13.** The Act also provides for the current situation in which KPMG has settled a separate English action brought against it by the plaintiffs in the main U.S. action. According to Subsection (3) of the Act, a third party who ceases to be liable to the plaintiff, by reason of an agreed settlement of the plaintiff's claim against him, may still be liable to make contribution to the defendant seeking contribution under Subsection (1). Subsection (1) provides that "any person liable in respect of any damage suffered by another person may recover contribution from any other person liable in respect of the same damage (whether jointly with him or otherwise)." The Civil Liability (Contribution) Act of 1978, *supra,* at § 1(1). Here, XCF can be said to be seeking contribution from KPMG for the same damage for which XCF was allegedly liable. Indeed, in moving for dismissal based on *forum non conveniens, see* discussion *infra,* KPMG argued that proceeding with the action here could *possibly* result in KPMG making double payment and in inconsistent judgments precisely because, KPMG claimed, this action and the settled English action assert liability for the same damage. (Second Third–Party Def.'s Mot. to Dismiss at 30–31).

(1947) (companion case to *Gilbert* ); *see also ACLI Int'l Commodity Services, Inc. v. Banque Populaire Suisse,* 652 F.Supp. 1289, 1292 (S.D.N.Y.1987) (Lasker, J.).

 As enumerated in *Gilbert,* the controlling private and public interest factors include: (1) the ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) practical problems involving the efficiency and expense of a trial; (5) enforceability of judgments; (6) administrative difficulties flowing from court congestion; (7) imposing jury duty on citizens of the forum; (8) the local interest in having controversies decided at home; and (9) the avoidance of unnecessary problems in the application of foreign law. *Gilbert,* 330 U.S. at 508–09, 67 S.Ct. at 843. *See also Allstate Life Ins. Co. v. Linter Group Ltd.,* 994 F.2d 996, 1001 (2d Cir.), *cert. denied,* 510 U.S. 945, 114 S.Ct. 386, 126 L.Ed.2d 334 (1993). Dismissal based on the balancing of these factors is within the broad discretion of the district court. *Maganlal,* 942 F.2d at 167. The moving party bears the burden of proving that the balance of convenience tilts strongly in favor of trial in the foreign forum. *Id.*

 The parties do not dispute that England is an alternative forum for the purposes of a *forum non conveniens* analysis. This motion thus turns on a balancing of the private and public factors.

### 1. The Private Factors

At the outset, KPMG and XCF express conflicting theories about the facts and issues to be decided by the court. These conflicting theories affect each parties' characterization of the factors relevant to this balancing test.

KPMG characterizes this action as English in nature. KPMG claims that most of the requisite evidence—witnesses and documents—regarding whether KPMG breached a duty to assist XCF in its defense against the plaintiffs in the main action focuses on the engagement of KPMG by XCF and the events that gave rise to XCF's alleged liability to the plaintiffs. KPMG asserts that these events took place in England; thus, the relevant witnesses and documents are located there. Similarly, KPMG claims that witnesses and documents relating to causation and damages are also located in England.

XCF counters that KPMG has too narrowly defined the factual inquiries in this third-party action. Specifically, XCF contends that KPMG was more than an auditor of Anglo; thus, the testimony of witnesses who are knowledgeable about the oral contract between KPMG and XCF, that allegedly established KPMG's responsibilities, is relevant to ascertaining the alleged duty and breach. These witnesses are in the United States. In addition, XCF disputes that it would have to prove that it was liable to plaintiffs in the main action in order to prove that KPMG's failure to assist XCF caused XCF's damages in tort; [14] therefore, the requisite witnesses and documents are not limited to those solely in England.

Turning now the first factor, KPMG claims that English-based non-parties control most of its relevant documents which are all of the papers relating to its audits of Anglo. KPMG emphasizes the relevance of these documents because it posits that XCF's claims evolve from events that created XCF's exposure to plaintiffs: the allegedly defective audits and alleged misrepresentations made by XCF, allegedly in reliance on advice from KPMG, to plaintiffs. The documents allegedly provide insight into whether plaintiffs had a valid claim, whether XCF had valid defenses and the nature of KPMG's role in the events that led to plaintiffs' suit and XCF's settlement of that suit. KPMG contends that many of these documents have been produced for other on-going litigation in England which further complicates the documents' accessibility.

XCF counters that the documents allegedly not within KPMG's control relate mostly to KPMG's auditing of the Weavers' Stamp companies, rather than the broader obligation allegedly owed by KPMG to XCF.

---

**14.** As discussed in the previous section, XCF need not prove its liability to plaintiffs in the settled main action for its contribution claim.

564

Thus, the documents in England are not necessary to this case. In general, however, documents are easily transportable and in this case, there are no other considerations that would make bringing foreign documents to the U.S. inconvenient, such as requiring translation from a foreign language into English. The only complication, then, is whether the documents allegedly requiring compulsion are relevant. *See e.g., Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 46 (3d Cir.1988) (in examining the relative ease of access to sources of proof and the availability of witnesses, the court "must scrutinize the 'substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant to, the plaintiff's cause of action and to any potential defenses to the action' ") (quoting *Van Cauwenberghe v. Biard,* 486 U.S. 517, 528, 108 S.Ct. 1945, 1953, 100 L.Ed.2d 517 (1988)). Because KPMG and XCF strongly disagree as to the factual scope of this action, which dictates the relevance of the documents, this factor is inconclusive.

Both parties also supply long lists of necessary witnesses to demonstrate the burdens and costs associated with traveling to the undesired forum. The development of worldwide travel, however, means that "mere distance alone is not a sufficient basis on which to conclude that a forum is inconvenient." *Bybee v. Oper der Standt Bonn,* 899 F.Supp. 1217, 1223 (S.D.N.Y.1995) (Stein, J.). The parties further contend that they cannot compel the testimony of these important witnesses in the undesired forum and KPMG asserts that it will not be able to implead potential third-party defendants. (Second Third–Party Def.'s Memo of Law in Supp. of Mot. to Dismiss at 26–27; Def.'s and Second Third–Party Pl.'s Memo of Law in Oppn. to Mot. to Dismiss at 26–27). Again, the relevance of each parties' witnesses will only be determined by future fact-finding by the court. These second and third factors, then, are also inconclusive.

▇▇▇ Regarding the fourth private factor, KPMG argues that the uncertainty and expense of using letters rogatory under the

Hague Convention, 28 U.S.C. § 1781 note, to compel witnesses and documents would render proceeding in New York inefficient. While proceeding under the Hague Convention is more time-consuming than compelling witnesses subject to process under the Federal Rules of Civil Procedure in the United States, KPMG's burden does not reach the requisite level of oppressiveness or vexatiousness, *Koster,* 330 U.S. at 524, 67 S.Ct. at 831–32, because the relevance of the many witnesses is indeterminate at this time. Moreover, KPMG's supporting cases are distinguishable basically because the government of the foreign party in each of those cases erected formal barriers to securing documents though letters rogatory under the Hague Convention. *See Transunion Corp. v. PepsiCo, Inc.,* 811 F.2d 127 (2d Cir.1987) (presidential decree banning removal of documents from the Philippines without official approval); *Haynes v. Kleinwefers,* 119 F.R.D. 335 (E.D.N.Y.1988) (explaining that resort to letters rogatory under Hague Convention was optional and that discovery on foreign party under the Federal Rules of Civil Procedure would facilitate the gathering of evidence especially since it was unclear that Germany would respond to letters of request for documents pursuant to Article 33 of the Convention); *Hudson v. Hermann Pfauter GmbH & Co.,* 117 F.R.D. 33 (N.D.N.Y.1987) (undertaking a comity analysis and balancing the countervailing interests to determine when a court should defer to the provisions of Hague Convention over the Federal Rules for discovery proceedings and finding, *inter alia,* that 1) use of discovery devices of the Federal Rules is more offensive to West Germany, a civil law country, than to the United Kingdom, a common law country; and 2) the inconveniences of proceeding under Hague Convention—greater expenditures of time and money—do not outweigh the important purposes served by the Convention). Even the treatise cited by KPMG suggests practical ways for assuaging England's concern that letters of request do not constitute "fishing expeditions," and for reducing the risk that England may invoke its Article 23 reservation.[15] *See* Gary B.

15. Article 23 of the Hague Convention allows

signatory countries to refuse to execute letters

Born & David Westin, *International Civil Litigation in United States Court* 416–17 & n. 158 (1992).

Lastly, KPMG argues that because actions are pending in England which arise from the same events at issue here, the risk of inconsistent judgments between the U.S. and English courts warrants dismissal. Plaintiff's English action against KPMG, alleging that KPMG negligently audited Anglo's 1987 and 1988 financial statements by "failing to uncover or account for the diversion of commissions allegedly committed by certain directors of Weavers," was recently settled. (Second Third–Party Def.'s Mot. to Dismiss at 31); Letter of 8/16/96 from William K. Dodds, (counsel for KPMG). LUI, Weavers and the other Stamp companies apparently make similar allegations in three other English actions against KPMG that remain active. (Second Third–Party Def.'s Mot. to Dismiss at 31). KPMG argues that the possibility of inconsistent judgments mandates that the English courts adjudicate all of the claims arising from the same events.

XCF refutes the possibility of inconsistent judgments because neither XCF nor plaintiffs are parties to the English actions and XCF's claims are distinct from those being litigated in the English actions. XCF emphasizes that the present action charges, *inter alia,* that KPMG breached its duty to XCF by refusing to cooperate in XCF's defense in an action brought against XCF by plaintiffs; the breach of this alleged duty differs from KPMG's allegedly negligent audits at issue in the English actions. The facts involved in the present and the English actions may spring from the same events, but the present cause of action arises from a lawsuit filed in New York. The present harm at issue differs from what KPMG states is alleged in the English actions. Even if KPMG is found by an English court to not have negligently audited Anglo's financial statements—which is not at issue here— the issue still remains as to whether KPMG breached an alleged duty to XCF. Thus, such a finding by an English court would not be decisive here; there is no "risk" of inconsistent judgments. Moreover, the pendency of foreign proceedings does not guarantee dismissal, *Herbstein v. Bruetman,* 743 F.Supp. 184 (S.D.N.Y.1990) (Sweet, J.). This consideration weighs in XCF's favor.

### 2. The Public Factors

Regarding the public interest factors with a bearing on this case, (the sixth, eighth, and ninth *Gilbert* factors), KPMG argues that dismissal is proper because English law will govern this action; that the maintenance of this action here would unnecessarily burden the court with oversight of discovery of the evidence located in England; and that the English courts have a greater interest in this action.

■ The fact that this case requires the court to interpret foreign law is insufficient, without more, to support dismissal. *Manu Int'l, S.A. v. Avon Prod.,* 641 F.2d 62, 68 (2d Cir.1981); *David Tunick, Inc. v. Kornfeld,* 813 F.Supp. 988, 992 (S.D.N.Y.1993) (Edelstein, J.). It is only one factor out of many under *Gilbert* to be considered.

It is true that oversight of discovery of the English-based documents may present more difficulty for the court than if all documents were within the United States. However, because the factual scope of this action is contested, it is not clear whether the court's oversight will in fact be complicated by the need for the evidence that KPMG contends is already being produced for the pending English litigation which, by the way, does not involve either XCF or plaintiffs in the main action. KPMG is not persuasive that any potential complication will reach the "oppressiveness or vexatious" standard for dismissal under *forum non conveniens.*

Lastly, whether in fact an English court has a greater interest in this action again depends on the factual scope of the dispute. XCF alleges that KPMG undertook a contractual obligation broader than that described by KPMG; KPMG's characterization of the alleged agreement would likely place

---

rogatory for "pretrial discovery of documents." 28 U.S.C. § 1781 note. This article does not affect depositions or interrogatories or the examination of documents for purposes other than pretrial discovery (i.e., for production as evidence at trial). *Id.*

more focus on events in England. Although New York and the United States have an interest in protecting the rights of an American company engaging in international financial transactions, it seems plausible that an English court has a greater interest in the resolution of disputes arising from the sale of a company created and operated under English law. However, England's interest in this action has indeed lessened due to the settlement of the English action between plaintiffs and KPMG.

In sum, then, three of the factors are inconclusive (access to proof, cost of obtaining willing witnesses, and compulsion of unwilling witnesses); four factors favor proceeding in this jurisdiction (practical problems involving efficiency and expense of trial, administrative difficulties of the court, the application of foreign law, and the pendency of foreign actions); and one factor favors dismissal (the "local interest" factor). KPMG's motion to dismiss on the basis of *forum non conveniens* is denied.

### III. Conclusion

For the reasons stated above, XCF's motion for reargument under Local Rule 3(j) is denied. KPMG's motions to dismiss on the basis of *forum non conveniens* is denied. XCF's cause of action against KPMG for breach of contract is dismissed for failure to state a claim under English law.

**IT IS SO ORDERED.**