NATIONAL CONGRESS FOR PUERTO RICAN RIGHTS, by Richie Perez, National Coordinator; and Kelvin Daniels; Poseidon Baskin; Djibril Toure; Hector Rivera; Victor Rodriguez; and Kahil Shkymba, individually and on behalf of a class of all others similarly situated, Plaintiffs,

v.

THE CITY OF NEW YORK; the New York City Police Department; and New York City Police Officers John Does # 1–500; Mayor Rudolph Giuliani; and New York City Police Commissioner Howard Safir, in their individual and official capacities, Defendants.

No. 99 Civ. 1695(SAS).

United States District Court,
S.D. New York.

Dec. 14, 1999.

Natalie R. Williams, Jennifer Cowan, Debevoise & Plimpton, Nancy Chang, Jonathan C. Moore, New York City, for Plaintiffs.

Lisa S.J. Yee, Assistant Corporation Counsel, Corporation Counsel for the City of New York, New York City, for Defendants.

## MEMORANDUM OPINION AND ORDER

SCHEINDLIN, District Judge.

### I. Introduction

This case involves alleged constitutional violations by a unit of the New York City Police Department known as the Street

Crime Unit (the "SCU"). The SCU is an elite squad of police officers whose purported mission is to interdict violent crime in New York City and, in particular, remove illegal firearms from the streets. Amended Complaint ¶ 38. It is alleged that SCU officers subject residents of high crime areas, particularly Black and Latino men, to stops and frisks based not on reasonable suspicion but on their race and national origin. *Id.* ¶ 39.

The named individual plaintiffs are six Black and Latino men between the ages of 23 and 31 years old who reside in the boroughs of the Bronx and Brooklyn. *Id.* ¶¶ 12–17. Each plaintiff alleges that he has been stopped and frisked by police officers believed to be members of the SCU without reasonable suspicion and on the basis of his race and national origin. *Id.* ¶¶ 63–74. Each claims to have sustained injuries as a result of these encounters including fear of the possibility of future stops and frisks.

Plaintiffs are seeking reconsideration of an October 20, 1999 Opinion and Order dismissing their Equal Protection claim for failure to identify similarly situated non-minority individuals who were not stopped and frisked by the SCU. For the following reasons, plaintiffs' motion is granted and their Equal Protection claim is reinstated.

## II. Legal Standard

■ The legal standard by which a Local Civil Rule 6.3 [1] motion for reconsideration is decided is the same as that which governed former Local Civil Rule 3(j). *See Wishner v. Continental Airlines,* 94 Civ. 8239, 1997 WL 615401, at *1 (S.D.N.Y. Oct. 6, 1997) (citing *Jones v. Trump,* 971 F.Supp. 783, 785 n. 2 (S.D.N.Y.1997)). Pursuant to Local Civil Rule 6.3, a party seeking reconsideration must demonstrate that the Court overlooked controlling decisions or factual matters " 'that might materially have influenced its earlier decision.' " *Anglo American Ins. Group, P.L.C. v. CalFed Inc.,* 940 F.Supp. 554, 557 (S.D.N.Y.1996) (quoting *Morser v. AT & T Info. Sys.,* 715 F.Supp. 516, 517 (S.D.N.Y.1989)). Local Civil Rule

6.3 "is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered by the court." *Wishner,* 1997 WL 615401, at *1 (citing *CalFed,* 940 F.Supp. at 557). Parties may not use a motion for reconsideration to " 'advance new facts, issues or arguments not previously presented to the court.' " *Great American Ins.. Co. v. J. Aron & Co., Inc.,* 94 Civ. 4420, 1996 WL 14455, at *2 (S.D.N.Y. Jan. 16, 1996) (quoting *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.,* 86 Civ. 6447, 1989 WL 162315, at *4 (S.D.N.Y. Aug. 4, 1989), *rev'd on other grounds,* 967 F.2d 742 (2d Cir.1992)). The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court. *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983).

## III. Discussion

■ Plaintiffs cite the case of *Brown v. Oneonta,* 195 F.3d 111 (2d Cir.1999), issued six days after this Court's Order, for the proposition that they need not identify similarly situated non-minority individuals in order to sustain an Equal Protection claim because the discriminatory policy alleged in their amended complaint contains an express, racial classification. In *Brown,* the Second Circuit explained that when a plaintiff pleads an Equal Protection violation by pointing to a law or policy " 'that expressly classifies persons on the basis of race' ", 195 F.3d at 118 (quoting *Hayden v. County of Nassau,* 180 F.3d 42, 48 (2d Cir.1999)),

> it is not necessary to plead the existence of a similarly situated non-minority group when challenging a law or policy that contains an express, racial classification. These classifications are subject to strict judicial scrutiny, and strict scrutiny analysis in effect addresses the question of whether people of different races are similarly situated with regard to the law or policy at issue.

*Id.* (citation omitted). As an example of a policy containing such an express, racial clas-

---

1. References to "Local Civil Rules" are, more specifically, references to the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, effective April 15, 1997.

sification, the court posited the situation where a law enforcement agency has a regular policy, based upon racial stereotypes, of questioning all black residents of a certain town whenever a crime of violence is reported. *Id.* at 119–20.

Plaintiffs construe the *Brown* decision as making clear "that a regular policy of racial profiling by law enforcement agencies—that is, making law enforcement decisions on the basis of racial stereotypes—constitutes a policy containing an express racial classification." *See* Letter from Natalie R. Williams and Jennifer R. Cowan, plaintiffs' counsel, dated November 30, 1999, at 2. Although the *holding* of *Brown* does not specifically address this issue, the policy alleged in the Amended Complaint does, in fact, contain an express, racial classification.

The Amended Complaint provides, in relevant part:

> John Does 1–500 have implemented and enforced a policy, practice and/or custom of stopping and frisking members of the plaintiff class based solely on the plaintiffs' race and/or national origin. These suspicionless stops and frisks have and are being conducted predominantly on Black and Latino males, on the basis of racial and/or national origin profiling, and are not being conducted on similarly situated White males. . . .

Amended Complaint ¶ 85. Accepting as true all factual allegation set forth in the complaint, *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996), the policy alleged in the above-quoted paragraph contains an express, racial classification.[2] Accordingly, under *Brown*, plaintiffs are excused from pleading the existence of similarly situated non-minority individuals and their Equal Protection claim is reinstated.

---

**2.** Defendants argue that plaintiffs' Equal Protection claim arises from the intentional discriminatory application of a facially neutral statute or policy. *See* Letter from Lisa S.J. Yee, defendants' counsel, dated November 17, 1999, at 3.

However, the language of the above-quoted paragraph belies any neutrality given that the alleged suspicionless stop and frisks are "based *solely* on the plaintiffs' race and/or national origin." Amended Complaint ¶ 85. (emphasis added).