In re SALOMON ANALYST
LEVEL 3 LITIGATION

In re Salomon Analyst Williams
Litigation

Nos. 02 Civ.6919 GEL, 02 Civ.8156 GEL.

United States District Court,
S.D. New York.

Jan. 11, 2005.

---

**2.** Because all of plaintiffs' claims are time-barred, the Court need not reach defendants' other arguments for dismissal.

Joseph H. Weiss, David C. Katz, Jack Zwick, Weiss & Yourman, New York City, Daniel A. Osborn, Christopher J. Marino, Beattie & Osborn LLP, New York City, Jacqueline Sailer, Gregory Linkh, Rabin, Murray & Frank LLP, New York City, Lead Counsel in Level 3 Litigation and Attorneys for Lead Plaintiffs Richard Garland, Douglas Lippold, and Charles Fuller.

Frederic S. Fox, Donald R. Hall, Kaplan Fox & Kilsheimer LLP, New York City, Lead Counsel in Williams Litigation and Attorneys for Lead Plaintiffs Small & Khalidy Investments, Richard P. Small Trust Clarence L. Bevington, and Gary A. Brom.

Martin London, Richard A. Rosen, Brad S. Karp, Eric S. Goldstein, Joyce S. Huang, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York City, Peter K. Vigeland, Wilmer, Cutler & Pickering, New York City, for defendants Citigroup Inc., Salomon Smith Barney, and Jack Grubman.

## OPINION AND ORDER

LYNCH, District Judge.

These two related cases concern allegations that the defendant bank Citigroup, Inc. ("Citigroup"), its division Salomon Smith Barney ("SSB"), and its research analyst Jack Grubman engaged in a scheme to defraud purchasers and sellers of stock in Level 3 Communications ("Level 3") and Williams Communications Group ("Williams"), and to enrich themselves, by issuing and disseminating research analyst reports on these companies that were materially false and misleading. In an Opinion and Order dated December 2, 2004, the Court dismissed, in part, the Complaints in these actions. *See In re Salomon Analyst Level 3 Litigation,* 350 F.Supp.2d 477 (S.D.N.Y.2004). On December 21, 2004, the Level 3 Plaintiffs and the Williams Plaintiffs moved for partial reconsideration of that decision. For the reasons that follow, both motions will be denied.

## DISCUSSION

I. *Standard on a Motion for Reconsideration*

■ Local Civil Rule 6.3 for the Southern District of New York provides that parties may file motions for reconsideration of the Court's decisions, accompanied by memoranda that set forth "the matters or controlling decisions which counsel believes the court has overlooked." Courts in this District review motions pursuant to Local Rule 6.3 under the same standards applicable to motions pursuant to Federal Rule of Civil Procedure 59(e), and thus "a motion for reconsideration is appropriate only where the movant demonstrates that the Court has overlooked controlling decisions or factual matters that

were put before it on the underlying motion ... and which, had they been considered, might have reasonably altered the result before the Court." *McCullagh v. Merrill Lynch & Co.,* 01 Civ. 7322(DAB), 2004 WL 744484, at *1 (S.D.N.Y. April 7, 2004) (citations and internal quotations omitted). Motions for reconsideration are not opportunities to re-argues issues or allegations already considered, and thus the rule should be "narrowly construed and strictly applied." *National Congress for Puerto Rican Rights v. City of New York,* 191 F.R.D. 52, 53 (S.D.N.Y.1999). In their motions, both the Level 3 Plaintiffs and the Williams Plaintiffs have identified a single allegation from the respective complaints that they claim the Court overlooked and that they argue should extend the actionable period back significantly before the April 18, 2001, date held appropriate in the December 2 Opinion. Although plaintiffs are correct that the December 2 Opinion did not specifically address the particular allegation they identify (in each case, merely two or three paragraphs in a nearly 200–paragraph complaint), neither of the allegations merits reconsideration under Local Rule 6.3 or alters the outcome of the motion to dismiss.

II. *The Level 3 Plaintiffs' Motion*

■ The Level 3 Plaintiffs argue that the Court "apparently overlooked" the allegations in paragraphs 59–61 of their Complaint, which they contend support an inference that Grubman's private opinion of Level 3 diverged from his publicly-stated opinion. (Level 3 Mem. 1.) Those paragraphs allege that, in February 1999, shortly before a planned public offering of Level 3 stock, a technical analyst at SSB issued a negative report on Winstar Communications and on the telecommunications sector in general.[1] Grubman had

---

**1.** According to the Level 3 Complaint, "a 'technical analyst' reviews stock prices in a sector to interpret trends in the market, as opposed to a 'qualitative analyst' like Grub- man who reviews prices and company fundamentals for specific companies." (Level 3 Compl. ¶ 59 n. 1.)

already issued one positive report on Level 3, rating the stock at "Outperform" on January 4, 1999. After being contacted by an institutional investor client, "demanding that the technical analyst be punished for [the] report," Grubman forwarded the request on to the heads of Global Equity Research and U.S. Equity Research at SSB, noting in his email that "[t]hese are sentiments shared by many investors who we are waiting on to buy Level 3 also. Here is yet another request that we should punish the technical analyst so that it does not impact us on Level 3. On the roadshow, I want to be able to say we are taking action on the technical analyst, otherwise investors will be afraid that the same thing will happen to Level 3." (Level 3 Compl. ¶ 60.)

Plaintiffs argue that this email demonstrates that "Grubman was privately expressing an opinion on Level 3 that was different from his public opinion." (Level 3 Mem. 2.) Plainly it does not. Plaintiffs rely on their conclusory allegations in both the Complaint and their briefs that Grubman "knew" that the technical analyst was correct and Grubman's reports were wrong, and that Grubman's reports were therefore false and misleading. However, nothing in the email gives the slightest indication that Grubman thought the technical analyst was correct. At best the email supports an inference that Grubman wanted to control any statement by SSB on the stocks he covered, to assure that they accorded with his own expressed views. It does not support an inference that Grubman did not truly believe his own "outperform" or, on February 22, 1999, "buy" ratings or target prices on Level 3, and thus cannot suffice to adequately plead falsity and scienter as to those reports.

Nothing in the Level 3 Plaintiffs' motion alters the Court's conclusion in the December 2 Opinion that, considering the totality of the allegations, the Level 3 Complaint fails to adequately plead falsity and scienter as to Level 3 reports issued prior to April 18, 2001. Accordingly, the motion will be denied.

## III. *The Williams Plaintiffs' Motion*

The Williams Plaintiffs argue that the Court did not address an allegation in their Complaint that Grubman's reports on Williams were false and misleading because his valuation models valued Williams at approximately $30 billion and "other valuation models at SSB" valued the company at approximately $9.3 billion. (Williams Compl. ¶¶ 3(d), 82(c).) Plaintiffs argue primarily that these paragraphs allege the omission of a material fact, which defendants had a duty to disclose, and therefore defendants' "truly held belief with respect to this omission" is irrelevant. (Williams Mem. 3.) In the alternative, they suggest that, even if the Court views the valuation models as opinions, the presence of the "other models" within SSB adequately pleads that defendants did not believe the models published in Grubman's reports on Williams. (*Id.* 3 n. 2.)

First, the Court rejects plaintiffs' characterization of valuation models as "fact" rather than "opinion." "Facts" about a company include data like amount of sales in a past quarter or the firm's market capitalization on a given date (closing price of the stock multiplied by number of shares outstanding), or events like an executive's promotion to CEO or the acquisition of a competitor. In contrast to these objective statements, financial valuation models depend so heavily on the discretionary choices of the modeler—including choice of method (e.g., discounted cash flow vs. market-based methods), choice of assumptions (such as the proper discount rate or cost of capital for a particular firm or industry), and choice of "comparables" that the resulting models and their predic-

tions can only fairly be characterized as subjective opinions. Like other opinions, some valuation models may be more or less reliable than other models, have more or less predictive power, or hew more or less closely to the conventional wisdom on a subject, but they are nonetheless opinions and not objective facts. An analyst who sets out his own opinion of a stock's value based on the valuation model he finds most persuasive for that company does not omit a material fact by failing to note that others may have different opinions or analytic approaches.

█ Moreover, neither the Williams Complaint, the brief in opposition to the motion to dismiss, nor the brief on the motion for reconsideration offer *any* particularized allegations about who created these "other models," when they were created, for what purpose, using what methodology and assumptions, or whether Grubman or any of his supervisors in the research department were aware of their existence. It is impossible to tell from this general allegation whether the "other models" are comparable in any way to the models used by Grubman. In any event, the fact that other individuals within SSB may have had views different from Grubman's does not provide any basis for an inference that *Grubman* did not believe his own professed opinions on Williams' value, or that the other valuation models, rather than Grubman's, constituted SSB's true institutional opinion (if such a concept is even meaningful). Under these circumstances, the allegation cited by the Williams Plaintiffs cannot support an inference of fraud or satisfy the requirement that falsity and scienter be pled with particularity.

Nothing in the Williams Plaintiffs' motion alters the Court's prior conclusion that, considering the totality of the allegations, the Williams Complaint fails to adequately plead falsity and scienter as to Williams reports issued prior to April 18, 2001. Accordingly, the motion will be denied.

## CONCLUSION

The motions for reconsideration submitted by the Level 3 and Williams plaintiffs do not present any fact or controlling legal authority that merits reconsideration of the Court's December 2 Opinion in these cases. Accordingly, both motions are denied. In light of the former pendency of these motions, defendants' time to answer the consolidated complaints in these cases is extended to January 31, 2005.

SO ORDERED.