Charles JONES, Plaintiff,

v.

Donald J. TRUMP, Marla Maples Trump, Plaza Hotel, a/k/a Plaza Operating Partners, Ltd., Jane Elder, Richard Fields, Ann Ogletree, Domenic Pezzo, Matthew Calamari, The Trump Organization, Michael Berger, Jay Goldberg, City of New York, Doreen Klein, individually and as an Assistant District Attorney for the County of New York, Robert Gianetta, Brian Higgins, John Baner and William Lynch, individually and as police officers of the City of New York, Jeanine Pirro, individually and as District Attorney, County of Westchester, Albert Pirro, Jr., Robert M. Morgenthau, individually and as District Attorney of New York, CDL Hotels, Defendants.

Charles JONES, Plaintiff,

v.

Marla Maples TRUMP, Donald J. Trump, The Plaza Hotel, Robert M. Morgenthau, Doreen Klein, The Trump Organization, Jeanine Pirro, Albert Pirro, Jr., Matthew Calamari, John Baner, Domenic Pezzo, Robert Gianetta, Della Rocca, The City of New York, Jane Elder, Frederick Cohn, Executive Plaza Condominium, CDL Hotels, Michael Berger, Richard Fields, Defendants.

Nos. 96 Civ. 2995(SAS), 96 Civ. 6927(SAS).

United States District Court, S.D. New York.

July 11, 1997.

Charles Jones, Greenwich, CT, pro se.

Frederick H. Cohn, Michael Berger, New York City, Douglas H. Flaum, Fried, Frank, Harris, Shriver & Jacobson, New York City, Morrie I. Kleinbart, Assistant District Attorney, Brigitte Duffy, Assistant Corporation Counsel, New York City, Mary K. Hafter, Assistant County Attorney, Office of the Westchester County Attorney, White Plains, NY, Philip M. Halpern, White Plains, NY, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

In an Opinion and Order issued on May 22, 1997, I granted defendants' motion to dismiss and the municipal defendants' motions for

partial summary judgment with prejudice, and denied plaintiff's cross-motion for partial summary judgment. *See Jones v. Trump,* 1997 WL 277375 (S.D.N.Y.1997). Plaintiff now moves pursuant to Rules 59(e) and 60(b)[1] to amend, alter or vacate the May 22 Opinion and Order. For the reasons set forth below, this motion is partially granted.

## I. Factual and Procedural Background

Familiarity with the facts and procedural history of this case is presumed. For a full account, *see Jones,* 1997 WL 277375 at *1.

## II. Applicable Legal Standard Under Rules 59(e) and 60

### A. Rule 59(e)

■■■ The legal standards for granting relief under Rule 59(e) are equivalent to those that apply to a motion for reargument under Local Rule 6.3.[2] *See Cohen v. Koenig,* 932 F.Supp. 505, 506 (S.D.N.Y.1996); *Farkas v. Ellis,* 783 F.Supp. 830, 832-33 & n. 1 (S.D.N.Y.), *aff'd,* 979 F.2d 845 (2d Cir.1992). Local Rule 6.3 states in pertinent part:

> A notice of motion for reconsideration or reargument shall be served within ten (10) days after the docketing of the court's determination of the original motion and ... shall be served with ... a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked.... No oral argument shall be heard unless the court grants the motion and specifically directs that the matter shall be reargued orally. No affidavits shall be filed by any party unless directed by the court.

Local Civil Rule 6.3. To satisfy this rule, the moving party must set forth a matter or controlling decision overlooked by the court in its initial review of the motion. *See, e.g., Farkas v. Ellis,* 783 F.Supp. at 832 ("The standard for granting a motion for reargu-

---

1. To be precise, plaintiff's legal memoranda only state that he moves under "Rule 60." Because plaintiff is *pro se,* it is appropriate to construe his moving papers liberally and in his favor. I therefore assume that plaintiff moves under Rule 60(b) as Rule 60(a) only applies to clerical mistakes in judgment and orders.

2. Local Rule 6.3 (Motions for Reconsideration or Reargument) was formerly Local Rule 3(j). As only minor revisions to the former Rule were made, the same legal standards apply to the new Rule 6.3 as were previously applied under the former Rule 3(j).

ment is strict in order to preclude repetitive arguments on issues that have already been considered fully by the court."). If the court finds the motion for reargument is warranted, the court may either direct the parties to reargue their motions orally or rely on the submissions as made. *See New York City Department of Finance v. Twin Rivers, Inc.,* 929 F.Supp. 172, 173 (S.D.N.Y.1996).

### B. Rule 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure is an attempt by the federal judicial system to balance the occasionally conflicting goals of finality and fairness.[3] The Rule "provides courts with authority to enable them to vacate judgments whenever such action is appropriate to accomplish justice" but such authority "should only be applied in extraordinary circumstances." *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 864, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988) (citations and quotations omitted). Therefore, a motion under Rule 60(b) "is addressed to the sound discretion of the trial court," *Matter of Emergency Beacon Corp.,* 666 F.2d 754, 760 (2d Cir.1981), whose "disposition of the motion will not be disturbed on appeal absent an abuse of that discretion." *National Petrochemical Co. v. M/T Stolt Sheaf,* 930 F.2d 240, 244 (2d Cir. 1991).

■ It is beyond question that Rule 60(b) is not intended to substitute for a direct appeal from an erroneous judgment. *See Ackermann v. United States,* 340 U.S. 193, 198–99, 71 S.Ct. 209, 211–12, 95 L.Ed. 207 (1950); *Matarese v. LeFevre,* 801 F.2d 98, 106–07 (2d Cir.1986). It is not appropriate for a district court to vacate an order under Rule 60(b) where "[n]o additional claims are advanced," and where movants "simply argue on the same facts that there are 'extraordinary circumstances' justifying the exercise of

the district court's equitable powers." *Cruickshank & Co. v. Dutchess Shipping Co.,* 805 F.2d 465, 469 (2d Cir.1986).

### III. Discussion

I have reviewed plaintiff's Memorandum of Law in Support of Motion ("Plaintiff's Mem."), Supplemental Memorandum of Law in Support of Motion ("Plaintiff's Supp. Mem."), Plaintiff's Reply Memorandum of Law in Support of Motion ("Reply Mem.") as well as plaintiff's supporting affidavit. To a large extent, plaintiff repeats claims already considered and rejected in the May 22 Opinion and Order, and I need not address those arguments here. However, plaintiff does raise several errors and ambiguities in the May 22 Opinion and Order which warrant further discussion.

### A. Plaintiff's State Claim for Intentional Infliction of Emotional Distress

■ The May 22 Opinion and Order stated: "Review of the notice of claim indicates that plaintiff did not identify his claim for . . . intentional infliction of emotional distress, assault or battery on the notice of claim form. He therefore failed to effectively file a notice of claim for these claims as required by statute." *Jones,* 1997 WL 277375 at *3. In fact, this finding was inaccurate with regard to plaintiff's claim for intentional infliction of emotional distress.[4] Plaintiff's notice of claim form indicates at the section of the form entitled "4. Items of damage or injuries claimed", plaintiff wrote the following:

> Injury Right Shoulder
>
> Injury Hand (handcuffs applied too tight) . . .
>
> Intentional Infliction of Emotional Distress

---

3. Rule 60(b) states: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . (6) any other reason justifying relief from the operation of judgment."

4. This finding, however, was accurate with regard to plaintiff's assault and battery claims. Although plaintiff did indicate that he had suffered physical injuries, he did not in any way indicate that he believed those injuries to be a result of defendants' intentionally tortious conduct. Defendants therefore had no notice of plaintiff's assault and battery claims.

*See* Declaration of Brigitte Duffy, Counsel to Municipal Defendants ("Duffy Decl."), dated February 26, 1997, Ex. F. Without doubt, the Notice of Claim form intends all claims to be listed in section entitled "2. The nature of the claim". Yet because the municipal defendants were not prejudiced by this minor irregularity, plaintiff cannot be deemed to have failed to identify his intentional infliction of emotional distress claim simply because he listed it in the wrong part of the notice of claim form. *See D'Alessandro v. New York City Transit Authority,* 83 N.Y.2d 891, 613 N.Y.S.2d 849, 850, 636 N.E.2d 1382, 1383 (1994) ("In passing on the sufficiency of a notice of claim ... General Municipal Law § 50-e(6) ... provides that 'a mistake, omission, irregularity or defect made in good faith ... may be corrected, supplied or disregarded, as the case may be, in the discretion of the court, provided it shall appear that the other party was not prejudiced thereby.' "). I therefore amend the May 22 Opinion and Order to the extent that it held otherwise.

Nevertheless, plaintiff's intentional infliction of emotional distress claim cannot survive defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be based. To establish a *prima facie* claim for intentional infliction of emotional distress, plaintiff must allege facts that satisfy four elements: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; (4) severe emotional distress. *See Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993). To satisfy the first element, plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quotation omitted). Furthermore, the conduct alleged must "be intentionally directed at plaintiff and lack any reasonable justification." *Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985). This standard was set deliberately high by the Court of Appeals in order to "filter[] out petty and trivial complaints that do not belong in court" and

to "assur[e] that plaintiff's claim of severe emotional distress is genuine." *Howell,* 596 N.Y.S.2d at 353, 612 N.E.2d at 702.

Plaintiff's claims fall short of meeting the strict requirements for the tort of intentional infliction of emotional distress under New York law because no individual defendant is alleged to have actually committed any overt act or series of acts that in themselves meet those requirements. *See* Plaintiff's Amended Complaint, 96 Civ. 6927 ("*Jones II*") at ¶¶ 182-185, 197-201. Rather, from what can be understood from plaintiff's lengthy and complex pleadings, defendants appear to be accused of conspiring to oppress and abuse plaintiff in a variety of ways. Plaintiff cannot rest his intentional infliction of emotional distress claim merely on defendants' alleged agreement to collaborate against him, and New York common law does not recognize an independent tort for conspiracy. *See Heinfling v. Colapinto,* 946 F.Supp. 260, 265 (S.D.N.Y.1996) (citing *Grove Press, Inc. v. Angleton,* 649 F.2d 121, 123 (2d Cir.1981)). Instead, he must set forth, clearly and concisely, allegations of specific instances of each individual defendant's conduct that rise to the level of "extreme and outrageous" conduct. Plaintiff's Amended Complaint fails to do this.

For example, plaintiff's claims for intentional infliction of emotional distress rely on generalized and conclusory statements such as the following:

> The defendants' false criminal charges against plaintiff and subsequent false arrest, false investigation and false imprisonment of plaintiff, because of defendants' knowledge of lack of probable cause or justification, were intentional, malicious ... reckless and in bad faith, constituting conduct that is so egregious as to shock the conscience....

*See* Amended Complaint at ¶ 183. Similarly, plaintiff alleges "the acts and actions of defendants, as are more fully described and set forth in paragraphs 1–68 of the Amended Complaint, constitute intentional infliction of emotional distress". *Id.* at ¶ 199. Yet those paragraphs of plaintiff's Amended Complaint fail to allege "extreme and outrageous" con-

duct pertaining to any individual defendant. Because the pleadings fail to set forth allegations of conduct pertaining to any individual defendant that rise to the level required by New York law for claims of this sort, defendants' motion to dismiss plaintiff's claims for intentional infliction of emotional distress pursuant to Rule 12(b)(6) must be granted.[5]

## B. Plaintiff's Contract Claims

 Plaintiff argues that as his alleged contracts with Maples, Trump and various other defendants were formed in the State of Connecticut, Connecticut law should apply to the resolution of defendants' motion to dismiss. Thus, he argues, citations to New York cases to support the proposition that the alleged contracts are void as against public policy are inapposite. This argument fails to breathe new life into plaintiff's contract claims because it is well-established under Connecticut law that contracts that violate public policy are unenforceable. *See Alan E. Silver, P.C. v. Jacobs,* 43 Conn.App. 184, 189, 682 A.2d 551 (1996) (citing, *inter alia, Konover Development Corp. v. Zeller,* 228 Conn. 206, 231, 635 A.2d 798 (1994)). It is equally well-recognized that marriage brokerage contracts are contrary to public policy. *See,* Restatement (First) of Contracts § 582; 52 Am.Jur. § 184 ("Contracts designed to bring about a marriage between one of the parties to the contract and a third person, or between two strangers to the contract, are universally held to be against public policy and void."). Furthermore, it can scarcely be debated that agreements to refrain from assisting with a criminal prosecution violate public policy by undermining society's criminal laws. *See Silver,* 43 Conn. App. at 190, 682 A.2d 551 ("Where a law is passed for the protection of the public, we will not undermine the remedial purposes of the statute by enforcing an oral contract in contravention of the law."). Plaintiff's contract claims must therefore be dismissed.

## C. Plaintiff's Prior Indictments

Plaintiff takes issue with the following statement in the May 22 Opinion and Order: "On April 15, 1993, plaintiff was indicted for unlawfully entering the apartment of his employer, Marla Maples, and stealing various items of her property." Plaintiff contends that he was never charged with "stealing", and that the Court should have merely stated that he was charged with and indicted for second degree burglary and fourth degree criminal possession of stolen property. To the extent that the above-quoted statement of the May 22 Order and Opinion was erroneous, it is hereby amended to reflect the actual charges contained in the indictment.

## D. Plaintiff's Claims for False Arrest and Unlawful Imprisonment

Plaintiff points out another inaccurate statement in the May 22 Opinion and Order: it is not true that "[a]ll of plaintiff's state law claims arose from events that took place in July of 1992." *See Jones,* 1997 WL 277375, at * 3. Rather, plaintiff's false arrest and unlawful imprisonment claims in Jones II (96 Civ. 6927) arose from plaintiff's arrest on October 5, 1995. As plaintiff's Amended Complaint in Jones II was filed on September 12, 1996, these claims were not barred by the one-year statute of limitations as I ruled in the May 22, 1997 Opinion and Order.

 Nevertheless, plaintiff's claims for false arrest and unlawful imprisonment, as well as his § 1983 claim for false arrest, cannot survive a Rule 12(b)(6) motion to dismiss. An essential element of all three claims is that defendants were not entitled to confine plaintiff. Where an arrest is made pursuant to a warrant, there can be no claim for false arrest or unlawful imprisonment. *See Singer v. Fulton County Sheriff,* 63 F.3d 110, 118-119 (2d Cir.1995). As plaintiff concedes, he was arrested on October 5, 1995 pursuant to a warrant issued by Judge Catal-

---

**5.** As I stated in the May 22 Opinion and Order, plaintiff's Amended Complaint is needlessly lengthy and complex, and includes "myriad and repetitious factual allegations that are unrelated to plaintiff's claims." *See Jones,* 1997 WL 277375, at *8. Plaintiff's claims for intentional infliction of emotional distress burden the Court

with the necessity of selecting relevant material from "a mass of verbiage", *see Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988), and thus violate the requirements of Rule 8 of the Federal Rules of Civil Procedure. *See Jones,* 1997 WL 277375, at *8-9.

do of the Criminal Court of New York City. *See* Duffy Decl., Ex. D; Amended Complaint ¶ 45. Plaintiff has therefore failed to allege that defendants were not entitled to arrest him; rather he claims the arrest was unlawful because the warrant itself was obtained through defendants' deliberate misrepresentations. While plaintiff may have a viable claim for malicious prosecution after the final resolution of his criminal prosecution, the claims for unlawful imprisonment or false arrest must be dismissed. *See Broughton v. State,* 37 N.Y.2d 451, 373 N.Y.S.2d 87, 94, 335 N.E.2d 310, 314–15 (1975) ("[w]hen an unlawful arrest has been effected by a warrant an appropriate form of action is malicious prosecution.").

### E. Plaintiff's § 1983 Claims

I did not individually address each of plaintiff's myriad § 1983 claims in the May 22 Opinion and Order because it was not necessary to do so. For reasons I already discussed in that Opinion and Order, plaintiff's § 1983 claims are collaterally estopped to the extent that they are based on defendants' alleged violation of his constitutional rights in furtherance of the search of plaintiff's Connecticut home. *See Jones,* 1997 WL 277375, at *6. To the extent that plaintiff's § 1983 claims are based on plaintiff's state law claims, they must be dismissed as the underlying state law claims were dismissed pursuant to Rule 12(b)(6). *See generally Wilson v. Garcia,* 471 U.S. 261, 277, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985) (state law is source of elements of § 1983 claim) (citing, *inter alia, Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961)).

## IV. Conclusion

For the foregoing reasons, plaintiff's motion pursuant to Rules 59(e) and 60(b) is partially granted, and the May 22, 1997 Opinion and Order is amended to the extent stated above. Despite these amendments, plaintiff has brought no new evidence, mistakes, controlling matters or decisions overlooked by the court that require a different result than that reached by the May 22 Opinion and Order with regard to defendants' motions to dismiss pursuant to Rule 12(b)(6).

Plaintiff's claims are therefore dismissed in their entirety with prejudice.

So Ordered.