**NATIONAL ASSOCIATION OF COLLEGE BOOKSTORES, INC., on behalf of itself and all its members, Bookcraft, Inc., d/b/a Beaver Bookstore, Michigan College Book Company, Inc., and Spartan Shops, Inc., d/b/a Spartan Bookstore, Plaintiffs,**

**v.**

**CAMBRIDGE UNIVERSITY PRESS, Oxford University Press, Inc. and Addison Wesley Longman, Inc. Defendants.**

No. 97 Civ. 5391(SAS).

United States District Court, S.D. New York.

Nov. 17, 1997.

Order Denying Reconsideration Dec. 17, 1997.

John B. Madden, Jr., Arent Fox Kintner, Plotkin & Kahn, New York City, Marc L. Fleischaker, Arent Fox Kintner, Plotkin & Kahn, Washington, DC, for Plaintiffs.

Sidney S. Rosdeitcher, Paul, Weiss, ·Rifkind, Wharton & Garrison, Mark A. Fowler, Satterlee Stephens, Burke & Burke L.L.P., New York City, Neil M. Motenko, Nutter, McClennen & Fish, L.L.P., Boston, MA, Julie A. North, Cravath, Swaine & Moore, New York City, for Defendants.

*OPINION AND ORDER*

SCHEINDLIN, District Judge.

Plaintiffs filed a Complaint on July 23, 1997, alleging violations of 15 U.S.C. § 13 (the "Robinson–Patman Act" or "the Act"). Plaintiffs seek an order enjoining defendant publishing companies from continuing to sell books pursuant to certain allegedly unlawful discount policies. Defendants now move to dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(6), asserting that plaintiff National Association of College Bookstores, Inc. ("NACS") lacks standing to bring the action and that the Complaint fails to state a claim upon which relief can be granted. For the reasons stated below, defendants' motion is denied.

## I.  Factual Background

For the purposes of this motion, the following allegations are assumed to be true. NACS is a non-profit trade organization whose membership consists of over 3,000 retail bookstores. Plaintiffs Bookcraft, Inc. (d/b/a Beaver Bookstore), Michigan College Book Company, Inc., and Spartan Shops, Inc. (d/b/a Spartan Bookstore) ("the individual plaintiffs") operate bookstores in Minnesota, Michigan and California, respectively. Like most NACS members, the individual plaintiffs serve primarily college students, staff and faculty. Complaint ("Cmplt.") at ¶¶ 5–9.

Defendants Cambridge University Press ("Cambridge"), Oxford University Press ("Oxford"), and Addison Wesley Longman, Inc. ("Addison") are companies that publish, sell and distribute books to retail bookstores, including NACS members, throughout the United States. Cmplt. at ¶¶ 10–12, 16. At issue in this lawsuit are certain of the defendants' pricing policies. The result of these policies, ·according to the plaintiffs, is that they are charged more than their competitors for identical books in violation of the Robinson–Patman Act.

Cambridge typically offers buyers volume discounts; i.e. the price it charges per book declines as the number of books ordered increases. In most situations, this discount ranges from 20 to 45%. However, when books are purchased for "classroom use," the discount is 20% regardless of the quantity purchased. Addison has adopted a plan under· which it ordinarily offers discounts of 37% for professional, technical and reference books. However, when the same books are ordered for "classroom text adoption," the discount is reduced to 20%. Oxford offers what is effectively a, "reverse" volume discount on certain books: The price it charges per book rises rather than falls as the number of books purchased increases. While the Oxford policy does not distinguish between books ordered for classroom use and those ordered for other purposes on its face, the plaintiffs contend that it achieves the same effect as the Cambridge and Addison policies: Because books are typically ordered in considerable volume when intended for classroom use, they cost more when used as textbooks than they do otherwise. Cmplt. at ¶¶ 19–23.

The defendants also sell books to retailers that are rarely affected by the challenged discount policies, in that they are unaffiliated with any colleges or universities. Such retailers include national chains with thousands of stores like Crown Books, Waldenbooks, Borders, Barnes & Noble, and B. Dalton's, as well as internet-based companies such as Amazon.com. "Most" NACS members are alleged to be in competition with non-NACS retailers. Beaver Bookstore, for example, is in competition with a nearby Barnes & No-

ble, and Spartan Bookstore is in competition with Crown, Barnes & Noble, Borders, and Waldenbooks stores. Cmplt. at ¶ 18, 24.

## II. Legal Standard for a Motion to Dismiss

In deciding a 12(b)(6) motion to dismiss, the court must accept as true material facts alleged in the complaint and draw all reasonable inferences in the nonmovant's favor. *See Kaluczky v. City of White Plains,* 57 F.3d 202, 206 (2d Cir.1995). Such a motion cannot be granted simply because recovery appears remote or unlikely on the face of a complaint, because "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Rather, dismissal can only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bernheim,* 79 F.3d at 321 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "While this pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996).

## III. Discussion

### A. Associational Standing

The defendants first argue that NACS lacks standing to bring this action. "An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Rent Stabilization Ass'n v. Dinkins,* 5 F.3d 591, 596 (2d Cir.1993) (quoting *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). The purpose of the associational standing doctrine is "to facilitate, in a fair and efficient manner, the collective adjudication of the common rights of an association's members," a goal which can be served by allowing a collective suit even in situations where a class action would be inappropriate. *International Union, United Auto. v. Brock,* 477 U.S. 274, 288, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986).

The defendants concede that the first two elements of the *Hunt* test are satisfied. The third is not, they contend, for two independent reasons: First, because violations of the Robinson–Patman Act can only be proven by a showing of particularized facts, the claim NACS asserts requires the participation of each of its individual members. Second, NACS members are not unanimous in support of the organization's lawsuit and collective adjudication of their rights would therefore be inappropriate. I will consider each of these arguments in turn.

The third prong of the *Hunt* test can be broken down into two parts—the "claim asserted" and the "relief requested" elements. Only the former is at issue here: Because NACS seeks only injunctive relief, it could prevail without a showing by its members as to what damages each suffered. *See Warth v. Seldin,* 422 U.S. 490, 515–16, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (relief element of *Hunt*'s third prong satisfied when injunctive relief is sought because "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured."). However, "the relief sought is only half the story." *Rent Stabilization,* 5 F.3d at 596. Even when an association requests an injunction, the claim it asserts may be such that it cannot be resolved on an association-wide basis.

In *Rent Stabilization,* for instance, the Second Circuit considered the claim of an association of New York City landowners that certain provisions of the city's rent regulations effected an unconstitutional taking of its members' property. Though the association sought only injunctive relief, the court held that it did not have standing under *Hunt.* A takings claim, the court noted, requires a property owner to show that he has been denied an "economically viable use" of, or a "just and reasonable return" on, the property in question, and that this injury was

caused by the challenged regulation. *Id.* The question of whether this burden is met cannot be answered without a particularized analysis of each owner's circumstances:

[To determine if a taking has occurred, we] would have to engage in an ad hoc factual inquiry for each landlord who alleges that he has suffered a taking. We would have to determine the landlord's particular return based on a host of individualized financial data, and we would have to investigate the reasons for any failure to obtain an adequate return, because the Constitution certainly cannot be read to guarantee a profit to an inefficient or incompetent landlord.

*Id.* In short, general factual allegations could never be sufficient to plead that most, indeed any, of the plaintiff's members had suffered a taking. Because the members of the plaintiff organization could therefore only prevail on an individual basis, associational standing was inappropriate. *See id.* at 597.

The defendants argue that this case is indistinguishable from *Rent Stabilization* in that the Robinson–Patman Act, like the Constitution's takings clause, requires an individualized analysis of each claimant's particular circumstances. They note in this regard the established rule that class certification of Robinson–Patman Act claims is inappropriate due to the degree of individuated proof required. *See, e.g., Clark v. H.P. Hood, Inc.,* No. 83–0205–C, 1985 WL 6263, at *1–2 (D.Mass. Sept.5, 1985); *O'Connell v. Citrus Bowl, Inc.,* 99 F.R.D. 117, 122–24 (E.D.N.Y. 1983); *Mekani v. Miller Brewing Co.,* 93 F.R.D. 506, 511–12 (E.D.Mich.1982); *Boro Hall et al. v. Metropolitan Tobacco Co., Inc.,* 74 F.R.D. 142, 145 (E.D.N.Y.1977).

As indicated above, however, the Supreme Court has made it clear that associational standing may be appropriate even when class certification is not. *See International Union, United Auto. v. Brock,* 477 U.S. at 288. Thus, courts have held that there is no per se rule against associational standing when a Robinson–Patman Act claim is brought. *See, e.g., Associated General Contractors v. Otter Tail Power Co.,* 611 F.2d 684, 690 (8th Cir. 1979) ("we hold that associations otherwise appropriate to present the issues involved

should not be precluded from bringing [Robinson–Patman Act claims for injunctive relief]"); *American Booksellers Ass'n v. Houghton Mifflin Co., Inc.,* No. 94 CIV. 8566(JFK), 1995 U.S. Dist. LEXIS 2522, at *12–17 (S.D.N.Y. March 3, 1995) (association has standing to bring Robinson–Patman Act claim on behalf of its members); *American Booksellers Ass'n v. Random House, Inc.,* No. 96 Civ. –0030, 1996 U.S. Dist. LEXIS 12775, at *13–22 (S.D.N.Y. August 12, 1996)(same); *Northern Cal. Booksellers Ass'n v. Hearst Corp.,* No. C–82–1468–THE (N.D. Cal. filed Apr. 13, 1982)(same). The question, therefore, is whether the facts of this case, as applied to the elements of the Act, indicate that individual proof precluding associational standing is required.

██ The Act makes it unlawful for anyone engaged in commerce:

to discriminate in price between different purchasers of commodities of like grade and quality, where ... the effect of such discrimination may be to substantially lessen competition ... with any person who either grants or knowingly receives the benefits of such discrimination, or with customers of either of them.

15 U.S.C. § 13(a)(1997). A prevailing Robinson–Patman plaintiff must therefore demonstrate: 1) that the defendant charged different purchasers different prices in contemporaneous transactions, 2) for products of like grade or quality, 3) where the favored purchaser was in actual competition with the disfavored purchaser, and 4) that there was a likelihood of competitive injury resulting from the discrimination. *See Best Brands Beverage, Inc. v. Falstaff Brewing Corp.,* 842 F.2d 578, 584–85 (2d Cir.1987).

██ Application of these elements to the facts of this case demonstrates that the "claim asserted" prong of the *Hunt* test is clearly satisfied. The first two elements of the Robinson–Patman Act claim can be proven largely by reference to the defendants' pricing policies, which apply to all retailers and indicate on their face that different purchasers pay different prices for the same books. The defendants admit that these and similar policies have been in place for dec-

ades. *See* Memorandum of Law in Support of Defendants' Joint Motion to Dismiss ("Defs' Brief") at 2. Some individuated proof may be required to show that particular transactions were made contemporaneously (if this is a disputed issue), but not nearly enough to require each NACS member to bring suit separately. The fact that a limited amount of individuated proof may be necessary does not in itself preclude associational standing. *See New York State Nat'l Org. of Women v. Terry,* 886 F.2d 1339, 1349 (2d Cir.1989) (associational standing present though evidence from some individual members required); *see also Intern. Union, United Auto. v. Brock,* 477 U.S. at 282 (*Hunt* test was formalized version of doctrine announced in *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), which held that associational standing was not present in cases requiring "the individual participation of each injured party .... " (emphasis added)). Especially in light of the alternative—requiring duplicative proof of contemporaneous transactions from each and every NACS member—there is no question that associational representation will better facilitate fair and efficient adjudication of these elements of the plaintiffs' claim. *See Houghton Mifflin Co., Inc.,* 1995 U.S. Dist. LEXIS at *15–16 (associational standing present despite the necessity of some individuated evidence; "[a]t some point, the proof [provided by individual members] will become redundant.").

■ The fourth element of the Robinson–Patman claim can be similarly proven. To satisfy it, the plaintiffs need only prove that they "may" be competitively injured by the defendants' actions. 15 U.S.C. § 13(a) (1997); *see also J. Truett Payne Co. v. Chrysler Motors Corp.,* 451 U.S. 557, 561, 101 S.Ct. 1923, 68 L.Ed.2d 442 (1981). Moreover, an inference of such possible injury can be drawn from the fact that defendants charged competing purchasers different prices. *See F.T.C. v. Morton Salt Co.,* 334 U.S. 37, 47, 68 S.Ct. 822, 92 L.Ed. 1196 (1948). Therefore, evidence of the defendants' pricing policies—combined, if neces-

sary, with a limited showing that these policies were actually put into effect—will be sufficient not only to establish the existence of a price discrimination, but also to show that a likelihood of competitive injury exists.

The third element of a Robinson–Patman claim presents a closer question. Actual competition, of necessity, is a fact that can only be proven with reference to a market participant's particular circumstances. According to the defendants, this means that NACS cannot prove the "actual competition" element of its claim without individualized evidence of the kind *Rent Stabilization* found to be incompatible with associational standing.

This argument has some merit; however, it is ultimately unpersuasive. The *Rent Stabilization* holding, as indicated above, was predicated on the fact that no association-wide facts sufficient to prove an element of the plaintiffs' claim could be shown. 5 F.3d at 596. Here, however, such facts can be shown: The plaintiffs allege that all NACS members are in competition with favored purchaser Amazon.com, an internet-based book retailer that offers millions of titles and is accessible by anyone with a computer and a modem. Therefore, while actual competition requires inquiry into each member's particular circumstances, in this case each member is faced with the same circumstances. The necessity of a painstaking, member-by-member analysis that precluded associational standing in *Rent Stabilization* is simply not present in this case. Stated differently, Amazon.com can be proven to be an omnipresent competitor; in contrast, the principles of takings law are such that no regulation short of outright physical appropriation could establish that a class-wide taking has occurred. *See* 5 F.3d at 596. Again, more particularized evidence regarding competition with Amazon.com may be required of some representative NACS members; as discussed above, however, this does not render associational standing inappropriate.[1]

---

1. Also as discussed above, no particularized evidence of competitive injury will have to be shown: The Act requires plaintiffs only to show that they "may" be injured, and an inference of injury can be drawn from evidence that competing purchasers paid different prices for the same goods. 15 U.S.C. § 13(a)(1997); *Morton Salt,* 334 U.S. at 47.

The defendants also argue that conflict within NACS makes associational standing inappropriate under *Hunt*. Several courts have found that internal conflicts of interest may be so severe that members of an association may be required to join the action individually in order to protect their own interests. *See, e.g., Maryland Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir.1991); *Polaroid Corp. v. Disney*, 862 F.2d 987, 999 (3rd Cir.1988); *Southwest Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374, 1380–81 (7th Cir.1987). None of these cases suggest that an association's members must unanimously favor the suit or that their interests must be perfectly aligned for associational standing to be present. Rather, they weigh the severity of the internal dissent as measured by two factors: First, whether the decision to bring suit was made in accordance with the association's normal procedures, and second, the extent to which the suit brings members' interests into actual or potential conflict.

As to the first factor, NACS presents evidence that its internal procedures were followed in making the decision to bring suit. *See* Affidavit of Jeffrey A. Mack, President of NACS ("Mack Aff.") at ¶¶ 4–5; *cf. Maryland Highways Contractors Ass'n*, 933 F.2d at 1253 (associational standing denied where the decision to sue was accompanied by procedural irregularities). The second factor is more troublesome. NACS admits that there is some internal opposition to the suit, and that some NACS members actually benefit from the defendants' pricing policies. *See* Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss the Complaint at 16. However, the number of NACS members so situated appears to be quite small. *See* Mack Aff. at ¶ 6 (less than 1% of NACS' membership has expressed opposition to the suit); Defs' Brief at 15 (identifying one opposing NACS member). Moreover, unlike in the cases cited by the defendants, the conflicting interests within NACS are far from "obvious." *Associated Gen. Contractors*, 611 F.2d at 691 (no associational standing where conflicts within plaintiff organization were apparent on the face of the Complaint). This is not a case in which the association is attempting to sue some of its members on behalf of others. *Cf. Southwest Suburban*, 830 F.2d at 1380–81 (no standing when association members were both plaintiffs and defendants in the case). Nor is it one in which the object of the suit is to eliminate a policy designed to benefit some of the association's members. *Cf. Maryland Highways Contractors Ass'n*, 933 F.2d at 1253 (contractors' association did not have standing to challenge minority business enterprise statute intended to benefit minority contractors when beneficiaries included association members). Finally, it is not one in which the association is riven by multiple serious conflicts. *Cf. Polaroid Corp.*, 862 F.2d at 999–1000 (target corporation does not have associational standing to assert the interests of its shareholders in enjoining hostile bid in light of clear conflicts of interest between management and shareholders as well as between different groups of shareholders). Instead, it more closely resembles the cases in which courts have found minor conflicts involving a small minority of an association's membership to be immaterial to standing analysis. *See, e.g., Contractors Ass'n v. City of Philadelphia*, 945 F.2d 1260, 1265 (3rd Cir.1991) (associational standing appropriate despite the fact that 29 of the association's 535 members benefited from the challenged program). Besides being supported by precedent, NACS's argument that standing is proper despite minor internal disagreements is supported by the policy underlying the associational standing doctrine. As noted above, the Supreme Court has indicated that associational standing may be important to the efficient, collective adjudication of members' common rights. *See Brock*, 477 U.S. at 288–89. If the rule implicitly proposed by the defendants were adopted, however, organizations such as NACS would almost never be able to sue on behalf of their members; as unanimity in organizations with thousands of members is rarely possible. This result would clearly be inimical to the goal of judicial efficiency: It is precisely in cases where large organizations are present that the greatest benefits are to be reaped by collective adjudication. *See id.* at 289 (associational standing can be beneficial to the judicial system in part because of associations' "res-

ervoir of expertise and capital.") At least in an organization the size of NACS, then, the mere existence of disagreement should not preclude associational standing.

## B. Failure to State a Claim

■ Even if NACS has standing to bring the action, defendants assert, dismissal is warranted under Fed.R.Civ.P. 12(b)(6) because the plaintiffs fail to state a claim upon which relief can be granted. The defendants do not argue, however, that the facts alleged in the Complaint, if proven, would not demonstrate a violation of the Robinson–Patman Act. Instead, they contend that the Complaint is insufficiently supported by specific factual allegations. This argument, however captioned in the defendants' briefs, implicates not Rule 12(b)(6), but Rule 8(a).

Federal Rule of Civil Procedure 8(a) requires a pleading to contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief ....." A Complaint is sufficient for the purposes of this rule if it gives the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Chahal v. Paine Webber, Inc.*, 725 F.2d 20, 23 (2d Cir.1984) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Moreover, a Complaint is to be read "liberally" for these purposes. *Id.* An antitrust plaintiff need not allege specific transactions in the Complaint to satisfy the Rule; a "general description[] of the conduct and practices at issue" will suffice. *Houghton Mifflin*, 1995 U.S. Dist. LEXIS 2522 at *18 (citing *Nagler v. Admiral Corp.*, 248 F.2d 319, 326 (2d Cir.1957)); *see Iandoli v. Asiatic Petroleum Corp.*, No. 75 Civ. 4414, 1976 U.S. Dist. LEXIS 15243, at *3 (S.D.N.Y. May 5, 1976) ("Plaintiff is not required to plead the date, time, amount and cost of the purportedly unlawful transactions. Such particulars should rather be uncovered through the discovery process ....."). In fact, even a Complaint that fails to allege an element of an antitrust claim may be adequate. *Donson Stores, Inc. v. American Bakeries Co.*, 58 F.R.D. 485, 487–88 (S.D.N.Y.1973) (Robinson–Patman Complaint not dismissed despite its failure to allege substantial lessening of competition); *David v. Sinclair Refining Co.*, 25 F.R.D. 190, 191 (S.D.N.Y.1960)(same). *But see McPherson's, Ltd. v. Never Dull, Inc.*, Civ. A. 90–2070, 1990 WL 238812, at *4 (D.N.J. Dec.26, 1990) (Robinson–Patman Act claim dismissed where Complaint failed to identify favored purchasers).

The Complaint clearly meets the requirements of Rule 8(a). As indicated above, to prevail on a Robinson–Patman Act claim, a plaintiff must show 1) that the defendant charged different purchasers different prices in contemporaneous transactions, 2) for products of like grade or quality, 3) where the favored purchaser was in actual competition with the disfavored purchaser, and 4) that there was a likelihood of competitive injury resulting from the discrimination. *See Best Brands Beverage, Inc.*, 842 F.2d at 584–85.

The first two elements of this test are adequately pled by paragraphs 18 through 23 of the Complaint, which outline the defendants' pricing policies and identify allegedly favored competitors. Given that the policies in question indicate on their face that different prices are charged to different purchasers for identical books, the defendants cannot seriously contend that these allegations do not give them fair notice of the grounds upon which these elements of the plaintiffs' claim rests. Implicitly, they argue that the Complaint must go beyond this to include allegations of particular transactions involving particular book titles. What they fail to indicate is why such voluminous detail is necessary, or even desirable. As the Second Circuit has stated:

> [S]uch pleading of the evidence ... is a matter for the discovery process, not for allegations of detail in the complaint. The complaint should not be burdened with possibly hundreds of specific instances ... if it were, it would be comparatively meaningless at trial where the parties could adduce further pertinent evidence if discovered.

*Nagler*, 248 F.2d at 326.

The same allegations adequately plead the fourth element as well. As noted above, the Supreme Court has held that an inference of injury to competition can be drawn from

evidence that some purchasers were required to pay substantially more than their competitors for the same goods. *See Morton Salt,* 334 U.S. at 46–47. Allegations of such a price differential and identification of the relevant competitors are therefore sufficient to notify the defendants of the facts on which plaintiffs intend to establish this inference.

Again, the third element presents a somewhat closer question. Because of the inherently fact-specific nature of this element, association-wide allegations of actual competition—such as those made in this Complaint—may in some cases be insufficient. Again, however, the presence of Amazon.com as a competitor is relevant: Because it is alleged to compete in every retail book market in which there are customers with internet access, allegations detailing specific geographic markets on a store-by-store basis are of diminished value. The defendants argue that to satisfy Rule 8(a), the Complaint must identify favored purchasers that compete with each NACS member. Under this reasoning, they would be satisfied with a pleading that alleged, in separate paragraphs for each NACS member, that each competes with Amazon.com. This, of course, is what they have now, minus 3,000 duplicative paragraphs. Rule 8(a) was designed to prevent, rather than require, such mindless formalism. *See Nagler,* 248 F.2d at 324.

The defendants' argument that *Mountain View Pharmacy v. Abbott Laboratories,* 630 F.2d 1383 (10th Cir.1980) counsels a different result is not persuasive. In that case, a Complaint that "fail[ed] to specify any products that were the subject of discriminatory treatment [or] identify the favored and disfavored purchasers of a particular product" was held not to meet the Rule 8(a) standard. *Id.* at 1388. As that court noted, these pleadings did "little more than recite the relevant anti-trust laws." *Id.* at 1387. The Complaint at issue here, on the other hand, does identify products that were subject to discriminatory treatment (Cmplt. at ¶ 2), favored purchasers (*id.* at ¶ 18) and disfavored purchasers (*id.* at ¶ 22). While it makes these allegations without reference to specific transactions or book titles, such detail is, as I have already discussed, unnecessary. Because the Complaint provides the defendants with fair notice of the grounds upon which the plaintiffs' claim rests, it satisfies the requirements of Fed.R.Civ.P. 8(a).

## IV. Conclusion

For the reasons stated above, plaintiff NACS has standing to bring this action on behalf of its members. Furthermore, the Complaint satisfies the requirements of Fed. R.Civ.P. 12(b)(6) and 8(a). The motion to dismiss is therefore denied. A status conference is scheduled for December 8, 1997 at 4:30 p.m.

SO ORDERED:

### OPINION AND ORDER ON RECONSIDERATION

Plaintiffs filed a Complaint on July 23, 1997, alleging violations of 15 U.S.C. § 13 (the "Robinson–Patman Act" or "the Act"). Plaintiffs seek an order enjoining defendant publishing companies from continuing to sell books pursuant to certain allegedly unlawful discount policies. Defendants moved to dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(6), asserting that plaintiff National Association of College Bookstores, Inc. ("NACS") lacks standing to bring the action and that the Complaint fails to state a claim upon which relief can be granted. In an Opinion and Order dated November 17, 1997 ("Opinion"), I denied defendants' motion. *See National Ass'n of College Bookstores v. Cambridge University Press,* 990 F.Supp. 245 (S.D.N.Y.1997). Familiarity with the Opinion is assumed for the purposes of the discussion below.

Defendants now move pursuant to Local Civil Rule 6.3 for reconsideration of the denial of their motion. Defendants move in the alternative for certification of the denial of the motion, pursuant to 28 U.S.C. § 1292(b), so that they may petition for leave to appeal under Fed. R.App. P. 5. For the reasons stated below, both motions are denied.

## I. Motion to Reconsider

The legal standard by which a Rule 6.3 Motion for Reconsideration is decided is the same as that governing former Local Rule 3(j). *Wishner v. Continental Airlines,* 94 Civ. 8239 (LAP), 1997 WL 615401, at *1 (S.D.N.Y. Oct.6, 1997) (citing *Jones v. Trump,* 971 F.Supp. 783, 785 n. 2 (S.D.N.Y.1997)). Pursuant to Local Rule 6.3, a party seeking reargument must demonstrate that the Court overlooked controlling decisions or factual matters "that might materially have influenced its earlier decision." *Anglo American Ins. Group, P.L.C. v. CalFed, Inc.,* 940 F.Supp. 554, 557 (S.D.N.Y. 1996) (quoting *Morser v. AT & T Info. Sys.,* 715 F.Supp. 516, 517 (S.D.N.Y.1989)); *see also Frankel v. ICD Holdings S.A.,* 939 F.Supp. 1124, 1126 (S.D.N.Y.1996). Local Rule 6.3 "is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered by the court." *Wishner,* 1997 WL 615401, at *1 (citing *CalFed,* 940 F.Supp. at 557); *Ades v. Deloitte & Touche,* 843 F.Supp. 888, 892 (S.D.N.Y.1994). The decision to grant or deny a motion for reargument is within the sound discretion of the district court. *See Cohen v. Koenig,* 932 F.Supp. 505, 507 (S.D.N.Y.1996); *Schaffer on Behalf of Triton Energy Corp. v. Soros,* 92 Civ. 1233, 1994 WL 592891, at *1 (S.D.N.Y. Oct.31, 1994).

The defendants fail to meet this standard. They argue that the Court reached an erroneous conclusion in relying too heavily on NACS' general claims that its members are engaged in actual competition with Amazon.com. As a result, they contend, the Court overlooked the fact that the bulk of the Complaint was devoted to allegations that NACS member stores are engaged in competition with traditional bookstores. The Court, however, did not overlook this fact; rather, it concluded that it was not necessary to decide the question of whether the allegations of competition with traditional bookstores were adequate for associational standing in light of the fact that actual competition could be proved at trial by association-wide evidence that all NACS members compete with Amazon.com. *See* Opinion at 12. In fact, contrary to the defendants' implicit assertion, had I reached the issue, it is likely that I would have found associational standing to be appropriate even without the allegations of competition with Amazon.com.[1] Defendants have therefore failed to identify a factual matter ignored by the Court "that might materially have influenced its earlier decision," *Anglo American Ins. Co.,* 940 F.Supp. at 557, and do not contend that the Court overlooked any controlling decision.

## II. Motion for Certification Pursuant to 28 U.S.C. § 1292(b)

In the alternative, defendants seek certification of the issue of NACS' standing to bring the action under § 1292(b). This section provides that a district judge shall only certify for interlocutory review an order that, *inter alia,* "involves a controlling question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). Certification under § 1292(b) should be "strictly limited" because "only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Flor v. BOT Financial Corp.,* 79 F.3d 281, 283 (2d Cir.1996) (quoting *Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21 (2d Cir.1990)). Thus, the Second Circuit has "urge[d] the district courts to exercise great care in making a § 1292(b) certification." *Westwood Pharmaceuticals, Inc. v.*

---

**1.** While the defendants correctly point out that this issue has never been squarely addressed by an appellate court, several district courts have decided virtually identical questions in favor of plaintiffs claiming associational standing. *See American Booksellers Ass'n v. Random House, Inc.,* No. 96–0030, 1996 U.S. Dist. LEXIS 12775, at *13–22 (S.D.N.Y. August 12, 1996), *American Booksellers Ass'n v. Houghton Mifflin Co., Inc.,* No. 94–8566, 1995 U.S. Dist. LEXIS 2522, at *12–17 (S.D.N.Y. March 3, 1995), and *Northern Cal. Booksellers Ass'n v. Hearst Corp.,* No. C–82–1468–THE (N.D. Cal. filed Apr. 13, 1982). The reasoning of these cases appears to be persuasive. I have found no support in the case law or in the policies underlying the associational standing doctrine for the proposition that standing is only appropriate when *no* individual member participation will be necessary. *See, e.g., Houghton Mifflin,* 1995 U.S. Dist. LEXIS 2522 at *15.

*National Fuel Gas Distribution Corp.*, 964 F.2d 85, 89 (2d Cir.1992). The decision as to whether certification should be granted "rests within the discretion of the district court." *In re Chase Manhattan Corp.*, No. 90 Civ. 6092(LJF), 1991 WL 224311, at *1 (S.D.N.Y. Oct. 21, 1991).

Defendants do not meet this difficult test, because there is no "substantial ground for difference of opinion" within the meaning of § 1292(b) as to whether NACS has associational standing to bring this suit. First, there is considerable precedent for the proposition that an association may have standing to bring a Robinson–Patman Act claim for injunctive relief without member-by-member evidence of actual competition with favored competitors. *See American Booksellers Ass'n v. Houghton Mifflin Co., Inc.*, No. 94–8566, 1995 U.S. Dist. LEXIS 2522, at *12–17 (S.D.N.Y. March 3, 1995); *American Booksellers Ass'n v. Random House, Inc.*, No. 96–0030, 1996 U.S. Dist. LEXIS 12775, at *13–22 (S.D.N.Y. August 12, 1996); *Northern Cal. Booksellers Ass'n v. Hearst Corp.*, No. C–82–1468–THE (N.D. Cal. filed Apr. 13, 1982). Defendants repeatedly assert that these cases were decided erroneously, but fail to cite any precedent directly supporting their position. Second, even if member-by-member evidence of actual competition were required, NACS could provide it in a manner compatible with associational standing, given the increasing presence of internet-based bookstores. *See* Opinion at 11–12.[2] Thus, even if defendants' largely unsupported legal theory is correct, it does not require a different result in this case. While courts might reach different conclusions as to defendants' standing arguments, that does not mean that this motion involves a controlling issue of law as to which there is a substantial ground for disagreement. Accordingly, this is not the "exceptional" case that warrants § 1292(b) certification. *Flor*, 79 F.3d at 281.

## III. Conclusion

Because this Court did not overlook any fact that might materially have affected its earlier decision, and because there is no sub-

stantial ground for disagreement as to a controlling issue of law within the meaning of 28 U.S.C. § 1292(b), defendants' motion for reargument and reconsideration or certification is denied.

SO ORDERED:

---

**2.** In addition to Amazon.com, the Court takes judicial notice of a recent advertisement in the New York Times Review of Books for Barnesandnoble.com.